*892 OPINION.
Marquette :
The first question presented for determination by the record in this proceeding is the value of the Coca-Cola franchise at the time it was acquired by the petitioner. The petitioner and the respondent are in accord that the value of the franchise at that time is the proper basis for determination of gain or loss from the subsequent sale in 1918, but they do not agree as to what the value was, the petitioner contending that it was $23,622, and the respondent that it was $15,000. There appears to be no dispute as to the cost of the physical assets sold in 1918.
Charles Y. Rainwater, secretary and treasurer of the Coca-Cola Bottling Co. of Atlanta, which controlled the bottling rights for Coca-Cola in a number of States, testified that he had been such secretary and treasurer since 1906 and had supervision of the making and approving of all contracts and subcontracts involving the right to bottle and sell Coca-Cola in the territory controlled by his company. He was familiar with the amount of Coca-Cola syrup consumed in each territory and the profits realized by the bottlers, and had bought and sold franchises on his own account and owned interests in various bottling plants. He stated that originally selling rights for Coca-Cola were given away in order to induce and stimulate the use of that product, but that by 1913 the franchises or rights to sell in certain territories, had become very valuable and that he considered a first line contract or state right had a value of $5 for each gallon of syrup consumed in the territory per year, and the subcontract, such as the one involved here, a value of $2 for each gallon of syrup consumed in the territory per year. The average consumption of syrup in the Sumter Plant territory during the years 1911, 1912, and 1913 was 11,811 gallons, and he considered the franchise right to that territory worth $23,622 when it was acquired by the petitioner in 1913. The testimony of Rainwater was not impeached or contradicted in any way and we are of the opinion that it establishes that the franchise in question had a value of $23,622 in June, 1913, and we so hold.
The next question is whether the petitioner, in computing its net income for 1918, is entitled to deduct the amount of $993, representing uncollected debts existing on December 31, 1918. The evidence shows that the petitioner had sold all of its assets in August, 1918, and remained in business only for the purpose of collecting its outstanding accounts. Some of these accounts were collected between *893 August and December, 1918, and on the latter- date there remained' the amount of $993 uncollected. These accounts the petitioner’s officers considered worthless and no further effort was made to collect them, and they remained uncollected. No book entry was made charging these debts off for the reason that the petitioner had ceased to keep books. We are of the opinion that the debts were worthless and were so ascertained by the petitioner during the taxable year 1918, and that the deduction claimed should be allowed.
The petitioner also alleged in its petition that the respondent erred in holding that the five promissory notes of $5,000 each, received by the petitioner in part payment for the assets sold in 1918 were worth par. However, the evidence produced as to this issue is not sufficient to warrant us in disturbing the respondent’s determination and the petitioner so concedes in its brief.
Order of redetermination will be entered on 15 days’ notice, under Rule 50.
Considered by Phillips, Milliken, and Van Fossan.